## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WELLS FARGO BANK, N.A.<br>1 Home Campus<br>Des Moines, Iowa 50328,<br><br>HSBC USA, INC.<br>One HSBC Center<br>Buffalo, New York 14203,<br><br>and<br><br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.,<br>1595 Spring Hill Road, Suite 310,<br>Vienna, Virginia 22182,<br><br>             Plaintiffs,<br><br>         v.<br><br>JOCQUELLE WRENN,<br>3004 S. Dakota Avenue, N.E.<br>Washington, D.C. 20018,<br><br>            Defendant. | Civil Action No. |

## COMPLAINT TO ESTABLISH LIENS OR FOR SPECIFIC PERFORMANCE TO RE-EXECUTE LIENS: ACTION INVOLVING REAL PROPERTY

Plaintiffs Wells Fargo Bank, N.A. ("Wells Fargo"), HSBC USA, Inc. ("HSBC") and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively Plaintiffs) file this Complaint. Plaintiffs seek an order directing the Recorder of Deeds for the District of Columbia to record as valid two deeds of trust (attached as Exhibits B and C) signed by Defendant Jocquelle Wrenn ("Wrenn") in conjunction with a loan secured by real property (the "Property") located at 3004 S. Dakota Ave., N.E., Washington, D.C. 20018, and described more fully as follows:

LDR/214328.1

All that piece or parcel of land, together with the improvements, rights, privileges and appurtenances to the same belonging, situate in the District of Columbia, described as follows, wit: Lot 19 in block 12 in the Subdivision made by Henry A. Vieth of Woodbridge, as per plat recorded in the office of the Surveyor for the District of Columbia in Liber 64, at folio 72.  Subject to a Right of way for the common driveway as created in a Deed dated 10-18-28 and recorded in Liber 6238, at folio 10.

Parcel Identification Number: 15-30-3256-004

Now known as Lot 19 in Square 4340 for assessments and taxation purposes.

In the alternative, Plaintiffs request that this Court issue an order directing Wrenn to re-execute the deeds of trust and any related documents so that they may be properly recorded with the Recorder of Deeds for the District of Columbia.  Additional relief is sought as set forth below.

## PARTIES

1.      Wells Fargo is a national banking association, and has its principal place of business in California.

2.      HSBC USA, Inc. is incorporated in Maryland, and has its principal place of business in New York.

3.      MERS is incorporated in Delaware, and has its principle place of business in Virginia.

4.      Upon information and belief, Wrenn is a citizen of the District of Columbia residing at the Property.

## JURISDICTION & VENUE

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) as the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.      Venue lies in this judicial district pursuant to 28 U.S.C. § 1391 as the defendant resides within the district and the Property that is the subject of the action is situated within the district.

## FACTS

7.      On or about November 16, 2006, Wrenn purchased the Property from Randolph Stevens for the sum of $580,000.  A true and correct copy of the deed is attached as Exhibit A.

8.      On or about November 16, 2006, to enable the purchase, Wrenn entered into a home mortgage loan transaction with New Century Mortgage Corporation ("New Century").  As part of that transaction, Wrenn signed two promissory Notes for $464,000 and $116,000 (the "Notes) and two deeds of trust encumbering the property for $464,000 and $116,000 (the "Deeds of Trust").  True and correct copies of the Deeds of Trust are attached as Exhibits B and C.

9.      Following execution of the loans, New Century caused to be conveyed its interest in Notes and the Deeds of Trust.  Wells Fargo is the servicer and legal holder of the Notes.  HSBC is the assignee of the Notes for whose benefit Wells Fargo holds them. MERS is the legal holder of the Deeds of Trust for the benefit of the holder of the Notes.

10.     Because of a clerical error, the Deed to Wrenn and the Deed of Trusts were never recorded with the Recorder of Deeds for the District of Columbia.

11.     For reasons unknown, the original Second Deed of Trust was also lost.

12.     The District of Columbia Recorder of Deeds will not accept for recording true and correct copies of the Deed of Trust without original signatures.

13.     Plaintiffs are not in a position to record their Deeds of Trust, but expect to be able to at least record the First Deed of Trust shortly.  Wrenn is required to do all acts to help in this process, including execution of documents.

14.     Upon information and belief, Wrenn is thought to be entering into a transaction to convey the Property prior to Plaintiffs' being able to properly record their security interests in the Property and therefore, threatens to put Plaintiffs' position in jeopardy.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court:

A.     Enter a declaratory judgment that Exhibits B and C are effective as security interests against the Property and direct the District of Columbia Recorder of Deeds to record such as valid liens against the Property;

B.     Order that Wrenn re-execute the Deeds of Trust and any related documents in conformity with the original agreement of the parties;

C.     Enter an award of attorney's fees and costs; and

D.    Grant such further relief as the interests of justice may require.

_____

Gary C. Tepper (D.C. Bar No. 348698)
Timothy W. Bucknell (D.C. Bar No. 494493)
ARENT FOX LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5339
(202) 857-8982 (telephone)
(202) 857-6395 (facsimile)

Attorneys for Plaintiffs
Wells Fargo Bank, N.A., HSBC USA, Inc. and
Mortgage Electronic Registration Systems, Inc.

Dated: January 28, 2008

# EXHIBIT A

Prepared by and ret ,rn to:
Tyama Arawole
Interactive Title
9250 Rumsey Road Suite 100
Columbia, MD 21044

File Number: 06-0127MD

_(Space Above This Line For Recording Data)_

# Warranty Deed

This Warranty Deed made this 16th day of November, 2006, between Randolph Stevens whose post office address is 3004 S. Dakota Avenue, NE, Washington, DC 20018. grantor, and Jocquelle Wrenn, Jocquelle Wrenn whose post office address is 3004 S. Dakota Avenue N.E., Washington, DC 20018. grantee:

(Whenever used herein the terms "grantor" and "grantee" include all the parties to this instrument and the heirs, legal representatives, and assigns of individuals, and the successors and assigns of corporations, trusts and trustees)

Witnesseth. that said grantor. for and in consideration of the sum of FIVE HUNDRED EIGHTY THOUSAND AND NO/100 DOLLARS ($580,000.00) and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt whereof is hereby acknowledged. has granted, bargained, and sold to the said grantee, and grantee's heirs and assigns forever, the following described land. situate, lying and being in the District Of Columbia to-wit:

All that piece or parcel of land , together with the improvements ,rights , privileges and appurtenances to the same belonging. situate in the District of Columbia, described as follows , wit :
Lot 19 in block 12 in the Subdivision made by Henry A. Vieth of "Woodbridge , as per plat recorded in the office of the Surveyor for the District of Columbia in Liber 64. at folio 72 . Subject to a Right of way for the common driveway as created in a Deed dated 10-18-28 and recored in Liber 6238 ,at folio 10.

Parcel Identification Number:   15-30-3256-004

Together with all the tenements. hereditaments and appurtenances thereto belonging or in anywise appertaining.

To Have and to Hold. the same in fee simple forever.

And the grantor hereby covenants with said grantee that the grantor is lawfully seized of said land in fee simple; that the grantor has good right and lawful authority to sell and convey said land: that the grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons whomsoever: and that said land is free of all encumbrances. except taxes accruing subsequent to December 31, 2005/2006.

In Witness Whereof. grantor has hereunto set grantor's hand and seal the day and year first above written.

Further Affiant sayeth not.

Jocquelle Wrenn

~~Jocquelle Wrenn~~

State of _____ MD _____

County of _____ PG _____

The foregoing instrument was acknowledged before me this ___16___ day of ___NOV_____, 20XX , by Jocquelle Wrenn, Jocquelle Wrenn, she (__) is personally known to me or (✓) has produced _MD DL/SS#4_ as identification.

SCOTT PARKHURST
NOTARY PUBLIC
BALTIMORE COUNTY, MD
My Commission Expires
March 12, 2008

Notary Public

Printed Name: _Scott Parkhurst_

My Commission Expires: _____

*Closing Affidavit (Buyer)* - Page 3
File Number:  06-0127MD

Signed, sealed and delivered in our presence:

Witness Name: _____ Scott Porthurst _____

Randolph Stevens

Witness Name: _____

State of _____ AD _____

County of _____ PG _____

The foregoing instrument was acknowledged before me this __16__ day of __Nov_____, 20 _06_. by
Randolph Stevens, he (__) is personally known to me or (✓) has produced _Drivers ID /SEE_ as identification.

Notary Public

Printed Name: _____ Scott Porthurst _____

My Commission Expires: _____

*Warranty Deed - Page 2*

# EXHIBIT B

Return To:

New Century Mortgage Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

──────────────────[Space Above This Line For Recording Data]──────────────────

# DEED OF TRUST

MIN 100488910106834053

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated  November 16, 2006
together with all Riders to this document.

**(B) "Borrower"** is JOCQUELLE WRENN, Sole Owner

Borrower's address is 348 SHADY GLENN DR , Capitol Heights, MD 20743
. Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is New Century Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of California
Lender's address is 18400 Von Karman, Suite 1000, Irvine, CA 92612

**(D) "Trustee"** is Stephen F. J. Ornstein Esq.

Trustee's address is 1700 Pennsylvania, Avenue N.W. Washington, D.C. 20006

1010683405

Record And Return To:
Interactive Title
9250 Rumsey Road
Suite 103
Columbia, MD 21044

**DISTRICT OF COLUMBIA**-Single Family-**Fannie Mae/Freddie Mac** UNIFORM INSTRUMENT WITH MERS

VMP® -6A(DC) (0205).02    **Form 3009  1/01**
(rev. 5/02)

Page 1 of 15          Initials

VMP Mortgage Solutions, Inc.

**(E)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument**. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)** **"Note"** means the promissory note signed by Borrower and dated  November 16, 2006                           .
The Note states that Borrower owes Lender FOUR HUNDRED SIXTY-FOUR THOUSAND AND 00/100
                                                                                        Dollars
(U.S. $464,000.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than 12/01/2036                        .

**(G)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |

                                                                         Prepayment Rider

**(J)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** **"Escrow Items"** means those items that are described in Section 3.

**(N)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _____

1010683405

Form 3009 1/01 (rev. 5/02)

**(Q)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the District of Columbia:
See Legal Description Attached Hereto and Made a Part Hereof

Parcel ID Number: 4340//0019                           which currently has the address of
3004 SOUTH DAKOTA AVENUE NE                                                    [Street]
Washington, District of Columbia 20018    [Zip Code] ("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

1010683405

-6A(DC) (0205).02                    Page 3 of 15                Initials: _____    Form 3009 1/01 (rev. 5/02)

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's

obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien

which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance

proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien



-6A(DC) (0205).02

Page 7 of 15

Initials: _____

1010683405

Form 3009 1/01 (rev. 5/02)

which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.



1010683405

Initials:

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). To the extent permitted by Applicable law, Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.



Initials: 

1010683405

-6A(DC) (0205).02                    Page 10 of 15                    Form 3009 1/01 (rev. 5/02)

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the

Initials:

1010683405

Form 3009 1/01 (rev. 5/02)

new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall send written notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall give notice of sale by public advertisement as Trustee deems proper to protect the interests of Borrower and Lender. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5.00 % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by recording a Deed of Appointment. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

1010683405

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                        JOCQUELLE WRENN              -Borrower

                                     348 SHADY GLENN DR
                                     Capitol Heights, MD 20743    (Address)

_____     _____ (Seal)
                                                                  -Borrower


                                                                  (Address)

_____ (Seal)     _____ (Seal)
                              -Borrower                            -Borrower


                      (Address)                            (Address)

_____ (Seal)     _____ (Seal)
                              -Borrower                            -Borrower


                      (Address)                            (Address)

_____ (Seal)     _____ (Seal)
                              -Borrower                            -Borrower


                      (Address)                            (Address)

1010683405

VMP -6A(DC) (0205).02                Page 14 of 15                Form 3009 1/01 (rev. 5/02)

**DISTRICT OF COLUMBIA, ss:** *PC*

I, *Scott Parkhurst*                                                        , a Notary Public in and for the District
of Columbia, do hereby certify that *Jocquelle Wright*

personally known to me as the person(s) who executed the foregoing instrument bearing date of *16*
day of *Nov*          *2006* , personally appeared before me in said District and acknowledged said
instrument to be his/her/their act and deed, and that he/she/they executed said instrument for the purposes
therein contained.

Witness my hand and official seal this *16* day of *Nov*          *2006*.



SCOTT PARKHURST
*NOTARY PUBLIC*
*BALTIMORE COUNTY, MD*
My Commission Expires
March 12, 2008

_____ (Seal)
Notary Public, D.C.

1010683405

MIN: 100488910106834053

# PREPAYMENT RIDER
# FIXED RATE LOAN

This prepayment Rider is made this **16th**    day of **November    2006**    , and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note to

**New Century Mortgage Corporation**                                    (the "Lender").

To the extent that the provisions of this Prepayment Rider are consistent with the provisions of the Note and/or Security Instrument, the provisions of this rider shall prevail over and shall supercede any such inconsistent provisions of the Note and/or Security Instrument.

In addition the covenants and agreements made in the Note and Security Instrument, the Borrower and Lender further covenant and agree as follows:

### 4.  BORROWERS RIGHT TO PREPAY

I have the right to make prepayments of principal any time before thay are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing I am doing so. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless: the Note Holder agrees in writing to those changes.

If within  **3**  year(s) from the due date of the execution of the Security Instrument, I make a full prepayment or, in certain cases a partial prepayment, and the total of such prepayment(s) in any 12 month period exceeds ONE THIRD (1/3) of the original principal amount of this loan, I will pay a prepayment charge in an amount equal to the payment of 2 months advance interest on the amount by which the total of my prepayment(s) within that 12 month period exceeds ONE THIRD (1/3) of the original principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

JOCQUELLE WRENN

NCMC
Prepay Rider - Fixed (DC/MD)
RE-138    (091802)                        Page 1 of 1                        **1010683405**

# EXHIBIT C

Return To:

New Century Mortgage Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

This is a true and certified copy
of the original document.

X _____

---

## DEED OF TRUST

MIN 100488910107480971

THIS DEED OF TRUST is made this 16th            day of November, 2006            , among the Grantor,
JOCQUELLE WRENN, Sole Owner

(herein ''Borrower''),

Stephen F. J. Ornstein Esq.

(herein ''Trustee''), and the Beneficiary,
Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's
successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number
of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
New Century Mortgage Corporation

("Lender") is organized and existing under the laws of California                                         , and has an
address of 18400 Von Karman, Suite 1000, Irvine, CA 92612

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and
conveys to Trustee, in trust, with power of sale, the following described property located in the District of Columbia:
See Legal Description Attached Hereto and Made a Part Hereof
   This Deed of Trust is Second and Subordinate to an Existing First Trust Deed Loan Now
of Record.

A.P.N. 4340//0019
which has the address of 3004 SOUTH DAKOTA AVENUE NE                                                    [Street]
Washington, D.C. 20018                        [ZIP Code] (herein ''Property Address'');
   TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances
and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which
shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with
said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the ''Property''.
Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust;
but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the
right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to
take any action required of Lender including, but not limited to, releasing or canceling this Deed of Trust.
   TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated   November 16, 2006
                                       and extensions and renewals thereof (herein ''Note''), in the principal sum of
U.S. $ 116,000.00              , with interest thereon, providing for monthly installments of principal and interest, with the
balance of the indebtedness, if not sooner paid, due and payable on 12/01/2036                     ; the payment
of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the
performance of the covenants and agreements of Borrower herein contained.
   Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey
the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower
warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.
   UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
   1. Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest indebtedness
evidenced by the Note and late charges as provided in the Note.

1010748097

DISTRICT OF COLUMBIA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS

Amended 5/02

Page 1 of 4

VMP-76N(DC) (0307)
VMP Mortgage Solutions, Inc. (800)521-7291

Initials

Form 3809

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

1010748097

Initials:

Form 3809

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the no-existence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall send written notice in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall give notice of sale by such public advertisement as Trustee shall deem proper to protect the interests of Borrower and Lender. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, Trustee's fees of       Five (5.00) % of the gross sale price, reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees, and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

1010748097

Initials:

Form 3809

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Release.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to release this Deed of Trust and shall surrender all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall release this Deed of Trust without charge to Borrower. Borrower shall pay all costs of recordation, if any.

**21. Substitute Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by recording a Deed of Appointment. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed the Deed of Trust.

_____ (Seal)                    _____ (Seal)
JOCQUELLE WRENN          -Borrower                                          -Borrower

348 SHADY GLENN DR
Capitol Heights, MD 20743        (Address)                                  (Address)

_____ (Seal)                    _____ (Seal)
                         -Borrower                                          -Borrower

                         (Address)                                          (Address)

_____ (Seal)                    _____ (Seal)
                         -Borrower                                          -Borrower

                         (Address)                                          (Address)

_____ (Seal)                    _____ (Seal)
                         -Borrower                                          -Borrower

                         (Address)                                          (Address)
                                                                    *[Sign Original Only]*

**DISTRICT OF COLUMBIA, ss:** *PG*

I, Scott Parkhurst                                        , a Notary Public in and for the District of Columbia
do hereby certify that *Jocquelle Wrenn*

personally known to me as the person(s) who executed the foregoing instrument bearing date of *16*
day of *Nov*              *2006*              , personally appeared before me in said District and acknowledged said instrument to be his/her/their act and deed, and that he/she/they executed said instrument for the purposes therein contained.

Witness my hand and official seal this        *16*        day of *Nov 2006*

_____ (Seal)
Notary Public, D.C.

SCOTT PARKHURST
NOTARY PUBLIC
BALTIMORE COUNTY, MD
My Commission Expires
March 12, 2008

1010748097

MIN: 100488910107480971

# PREPAYMENT RIDER
# FIXED RATE 2ND LIEN

This Prepayment Rider is made this **16th** day of **November** **2006** , and is incorporated into and shall be deemed to amend and supplement the Promissory Note (the "Note") and Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure repayment of Borrower's Note to

**New Century Mortgage Corporation** (the "Lender").

To the extent that the provisions of this Prepayment Rider are inconsistent with the provisions of the Note and/or Security Instrument, the provisions of this Rider shall prevail over and shall superseded any such inconsistent provisions of the Note and/or Security Instrument.

In addition to the covenants and agreements made in the Note and Security Instrument, the Borrower and Lender further covenant and agree as follows:

**6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE**

I have the right to make payments of principal at any time before they are due. A prepayment of all the unpaid principal is known as a "full prepayment". A prepayment of only part of the unpaid principal is known as a "partial prepayment."

Except as provided below, I may make a full prepayment or a partial prepayment without paying any penalty. If I make a partial prepayment equal to one or more of my monthly payment, my due date may be advanced no more than one month. If I make any other partial prepayment, I must still make each later payment as it becomes due and in the same amount. I may make a full prepayment at any time. However, if within the first **2** year(s) after the execution of the Mortgage, I make any prepayment(s) and the total of such prepayments in any twelve (12) month period exceeds one-third (1/3) of the original principal amount of this loan, I will pay a prepayment charge in an amount equal to the payment of two (2) months' advance interest on the aggregate amount prepaid which is in excess of one-third (1/3) of the original principal amount of the loan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_____        _____
JOCQUELLE WRENN


_____        _____


_____        _____


_____        _____


NCMC
Prepay Rider - Fixed 2nd (DC)
RE-140    (073097)                    Page 1 of 1                    **1010748097**

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Wells Fargo Bank, N.A., HSBC USA, Inc., and Mortgage Registration Systems, Inc.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Polk
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

Jocquelle Wrenn

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  District of Columbia
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Gary Tepper
Timothy Bucknell
Arent Fox LLP, 1050 Connecticut Ave. NW
Washington, DC. 20036 (202) 857-6000

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE an x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
◉ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ◉ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ◉ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**
☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**
Any nature of suit from any category may be selected for this category of case assignment.
*(If Antitrust, then A governs)*

◉ **E. General Civil (Other)**   OR   ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☒ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
⦿ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Action to Establish Liens or for Specific Performance to Re-execute Liens

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____ Check YES only if demanded in complaint    JURY DEMAND:    YES ☐    NO ☒

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE 1/28/08    SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.